**Kenneth JORDAN et al.**

**v.**

**Inhabitants of TOWN OF CANTON.**

Supreme Judicial Court of Maine.

May 6, 1970.

Louis Scolnik, Lewiston, for plaintiffs.

Fred E. Hanscom, Rumford, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, WEATHERBEE and POMEROY, JJ.

WEBBER, Justice.

On report. This petition for declaratory judgment seeks a determination of the validity and legal effect of an action taken on August 5, 1968 by the selectmen of defendant town purporting to classify the Alden Hill Road, heretofore a public town way, a "limited-user highway" pursuant to 23 M.R.S.A. Sec. 2068. The facts are not in dispute and are fully set forth by the pleadings and pretrial memorandum. Plaintiffs are abutters on said road who claim a loss of property rights including the right of access to the public road system. The challenge is to the constitutionality of the statute which was first enacted as P.L.1967, Ch. 240.

The statute in effect in 1968 read as follows:

"Sec. 2068. Limited-user highways. Where any public highway, road, street, town or county way, but not including roads or ways under the jurisdiction of the State Highway Commission, shall, after public notice, be found by the municipal officers of cities and towns with regard to such ways located within their respective boundaries, in organized territory, and the county commissioners in the case of such ways, located within their jurisdiction, in unorganized territory, to be of limited use and value to the traveling public, said city, town or county shall not be required to expend any further public funds on such ways, but such ways shall be deemed public ways, and not abandoned and the general public shall have the right to use same, and any person, firm, corporation or association may expend their funds for the upkeep of same on a purely voluntary basis. No city, town or county shall be liable for defects in such ways, and the determination of limited use shall not impair the right of any public utility or other person or corporation having facilities lawfully located within any such way from continuing to operate, maintain and repair such facilities within such ways. A finding of limited use shall not be deemed to be a discontinuance. Public notice under this section shall be by publication in a newspaper circulated in a municipality in which the way is located at least 14 days prior to the date scheduled for the determination of limited use or posting in at least 2 conspicuous places in an unorganized territory in which the way is located at least 14 days prior to the determination of limited use."

Our research and that of counsel fail to disclose the existence of a statute in any other jurisdiction similar to Sec. 2068. The existence of certain constitutional infirmities which we will discuss may help to explain why no statute of like import can be found.

▇ The statute is designed to permit a governmental entity to avoid the expense of maintaining and keeping certain designated roads open for travel and free from dangerous defects. Its responsibility for accident caused by such defects in a road so designated is removed. All this is accomplished without technical discontinuance of the public way and without terminating the public easement therein. No provision is made for compensation to abutting owners for the destruction of property rights.

The provisions of Sec. 2068 stand in sharp contrast to the statutory requirements for discontinuance of a town way. 23 M.R. S.A. Sec. 3004 provides that the municipal officers "shall estimate the damages suffered by any person thereby," and Sec. 3005 provides a method of judicial review of such "estimate." In like manner damages are provided for in the case of the laying out, altering and widening of town ways by Sec. 3003 and the judicial review thereof is made applicable by Sec. 3005. In the case of a formal discontinuance of a public way, it is unnecessary for the governmental entity to take title to land by eminent domain and it is therefore apparent that the provision for compensation reflected a legislative recognition that abutting owners have other property rights which may be destroyed by discontinuance and for which payment must be made.

Art. I, Sec. 21 of the Maine Constitution provides: "Private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it."

▇ The right of access to a public way is a property right in the nature of an easement. By access is meant not only the right of ingress and egress as between the owner's property and the way but also access to the general road system to which his property is connected by the street or road. Our prior acceptance of this view was made apparent in our opinion in Jacobson v. State Highway Commission (Me.

1968) 244 A.2d 419, 421, 422, wherein we said:

"These decisions hold that while the abutting landowner *has a property right in reasonable access to the public streets* he has no right that such access and the opportunity for his guests to reach him shall be by the most direct or most convenient route." (Emphasis supplied)

There is ample authority to be found in the cases cited in support of the text in 29A C.J.S. Eminent Domain § 126, p. 501. It is therein stated:

"The courts have variously declared that compensation is required when the vacation or closing of a street or highway deprives the abutting owner of his sole or principal means of access, or a suitable means of access, or where the abutting owner has no other reasonable means of access. The injury sustained must be special and the owner cannot recover for damage suffered in common with the rest of the community."

To the same effect is the text in 26 Am.Jur. 2d 882, Eminent Domain, Sec. 200, which states:

"Clearly, an owner of land abutting on a street or highway cannot constitutionally be deprived of all access to his premises without compensation, either by the vacation of the street or highway or its physical obstruction in front of his premises, or its obstruction at another place so that the portion of the street in front of his premises cannot be reached. Total deprivation of access is equivalent to a taking requiring compensation, especially when the easement of access to the street or highway is recognized by the substantive law of the state."

The concept that the right of access is a property right which cannot constitutionally be "taken" without compensation has won wide judicial acceptance. In McMoran v. State (1959) 55 Wash.2d 37, 345 P.2d 598, 599, the court quoted from its own prior de-

cision in State v. Calkins (1957) 50 Wash. 2d 716, 314 P.2d 449, 450 as follows:

" 'It is well established that the owner of land abutting upon a conventional highway has an easement of ingress and egress. This has been treated as a property right, attached to the land. *The courts unanimously hold that such an owner is entitled to just compensation if this easement or property right is taken or damaged.'* (Italics ours)."

For application of the same principle, see Liddick v. City of Council Bluffs (1942) 232 Iowa 197, 5 N.W.2d 361; Anderlik v. Iowa State Highway Commission (1949) 240 Iowa 919, 38 N.W.2d 605 (declining to overrule Liddick); Department of Highways v. Jackson (Ky.1957) 302 S.W.2d 373 (declining to distinguish between city streets and county roads); Thom v. State (1965) 376 Mich. 608, 138 N.W.2d 322 (overruling prior decisions); State ex rel. Morrison v. Thelberg (1960) 87 Ariz. 318, 350 P.2d 988 (overruling prior decision); Anhoco Corporation v. Dade County (1962) 144 So.2d (Fla.) 793.

■ We recognize that in a number of states the constitution has been amended to provide that compensation must be paid when private property is "damaged" as well as "taken." We hold, however, that when all reasonable access has been destroyed, the property right has been "taken" within the meaning of Art. I, Sec. 21.

■ The constitutional requirements apply to police power statutes as well as to provisions for eminent domain. The cases cited above deal variously with such exercises of the police power as conversion to a limited access highway, creation of a cul-de-sac, obstruction of the way by barrier and the like. Nevertheless the compensation principle had application. In Wolfe v. City of Providence (1950) 77 R.I. 192, 74 A.2d 843, 851, the statute authorized a municipality to prohibit the use of all vehicles on certain designated public ways. The court held the statute invalid "in so far

as it purports to authorize the closing of a street to all vehicular traffic without affording to abutters thereon compensation and due process of law." We note that in our own statutory provisions for the creation of "controlled access highways," specific provision is made for the taking of "existing easements of access" and the payment of compensation therefor. 23 M. R.S.A. Sec. 303. Without doubt the Legislature considered such a provision to be essential in order to satisfy the requirements of Art. I, Sec. 21.

■ The defendant contends in the instant case that since the road has not been technically discontinued and remains a public way, the plaintiffs have not lost their right of access. But cases involving loss of access depend on the practical and factual consequences of governmental action rather than the legal status of the highway. So one whose property abuts a public way may suddenly find himself barred from access because the way has been converted to a limited access highway, or barriers or obstructions have been installed under police power authority. His property still abuts a public way but the way no longer serves his property either because he cannot reach it or because it no longer connects his property with the public road system. In short, it is actual and practical discontinuance rather than technical discontinuance that destroys the easement. The action permitted by Sec. 2068 has precisely this result. The fact that a "limited-user highway" continues to have a legal status as a "public way" over which there continues to be a public easement of travel is meaningless if there is no longer any public responsibility for maintenance and repair. Without maintenance or repair, it is only a question of time before a public road will become impassable or unsafe for travel. The rigors of Maine weather, the action of frost and the erosion from rain and melting snow will speed the process of disintegration. The ability to use the road for vehicular travel and thus the abutter's easement

of access to and over the road to the public road system will inevitably be destroyed.

No legal significance can be attached to the permission afforded by Sec. 2068 to individuals who may wish to provide some maintenance and repair on a voluntary basis. Since no duty is imposed, the law will not assume that any such voluntary action will be taken.

■ The effect of the statute is to permit an actual or "de facto" discontinuance of a public way without any accompanying provision for compensation for the "taking" of private property rights which will almost inevitably result therefrom. In judging whether a statute satisfies constitutional requirements, we look to the possible and not merely the probable consequences which may flow therefrom. "It is not what has been done, or ordinarily would be done, under a statute, but what might be done under it, that determines whether it infringes upon the constitutional right of the citizen. The constitution guards against the chances of infringement. It is evident that under this statute the citizen might in some cases be practically deprived of all remedy." Bennett v. Davis (1897) 90 Me. 102, 105, 37 A. 864, 865; Sleeper, Applt. (1952) 147 Me. 302, 308, 87 A.2d 115. Under Sec. 2068 an abutter could be deprived of his sole access to the road system with no statutory method provided for obtaining compensation.

As early as 1833 in Comins v. Bradbury, 10 Me. 447, 449, our Court set aside the location of a public way because the legislative resolves authorizing the location made no provision for any method of recovering compensation. The Court said, "It is insisted that the present action ought not to be sustained; inasmuch as the plaintiff might have full justice done him upon petition to the legislature (as for a claim). But this could not have been the mode by which to obtain the indemnity, contemplated by the constitution. It is of too precarious and uncertain a character. Compensation must be made *or provided for,* when the property is taken. *It is upon that condition alone that such taking is authorized."* (Emphasis supplied). And in Cushman v. Smith (1852) 34 Me. 247, 265, we read, "After some difference of opinion it may now be regarded as settled, that enactments, which authorize private property to be taken for public use *must provide the means or course to be pursued to have compensation made for it."* (Emphasis ours). See also Pierce v. City of Bangor (1909) 105 Me. 413, 74 A. 1039; State v. Fuller (1909) 105 Me. 571, 579, 75 A. 315.

■ We conclude that Sec. 2068, unaccompanied by any statutory method of providing compensation to those whose property rights may be destroyed and "taken" thereunder, fails to meet constitutional requirements. The action taken by the Town of Canton pursuant thereto must be deemed void and of no effect. The rights and obligations of the parties with respect to the Alden Hill Road remain as they existed prior to the action purporting to designate said road as a "limited-user highway."

So ordered.