### Perry A. LAMB

v.

### TOWN OF NEW SHARON and County of Franklin.

Supreme Judicial Court of Maine.

Argued Nov. 20, 1991.
Decided April 7, 1992.

Perry A. Lamb (orally), pro se.

Mary Devine, Zuckerman, Avaunt, Devine & Page, Gray, amicus curiae.

William H. Dale (orally), Jensen, Baird, Gardner & Henry, Portland, for Town of New Sharon.

Frank Underkuffler, Farmington, for County.

Joseph Wathen, Maine Mun. Ass'n, Augusta, amicus curiae.

Before McKUSICK, C.J.,[*] and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

COLLINS, Justice.

The plaintiff, Perry Lamb, appeals an order of summary judgment entered in the Superior Court (Franklin County, *Perkins, J.*) in favor of the defendants, Town of New Sharon (Town) and Franklin County (County), thereby dismissing Lamb's request for an injunction ordering the County to repair at the Town's expense a road that traversed Lamb's property. In an earlier order in this case, the court (Mac Innes, A.R.J.) found after a bench trial that the disputed road had been abandoned pursuant to 23 M.R.S.A. § 3028 (Supp.1990).[1] Lamb argues, *inter alia*, that (1) the Town was barred from litigating the issue of the road's abandonment because the Town failed to appeal an earlier decision of the County ordering it to repair the road; (2) section 3028 works a "taking" without just compensation and violates his right to due process and equal protection; and (3) the evidence did not support the finding that the road had been abandoned under the statute. Finding no error or abuse of discretion, we affirm.

Lamb is a professional forester who owns and actively manages approximately 1600 acres of forest land in New Sharon. His property is traversed by what is called either the Batchelder Road or the Weeks Mills—Farmington Falls Road. The road

---

[*] McKusick, C.J. sat at oral argument and participated in the initial conference, but retired before this opinion was adopted.

1. 23 M.R.S.A. § 3028 (Supp.1990) states in relevant part:

It shall be prima facie evidence that a town or county way not kept passable for the use of motor vehicles at the expense of the municipality or county for a period of 30 or more consecutive years has been discontinued by abandonment. A presumption of abandonment may be rebutted by evidence that manifests a clear intent by the municipality or county and the public to consider or use the way as if it were a public way.... No municipality or its officials shall be liable for non-performance of a legal duty with respect to such ways if there has been a good faith reliance on a presumption of abandonment. Any person affected by a presumption of abandonment, including the State or a municipality, may seek declaratory relief to finally resolve the status of such ways. A way that has been abandoned under this section shall be relegated to the same status as it would have had after a discontinuance pursuant to section 3026, except that this status shall be at all times subject to an affirmative vote of the legislative body of the municipality within which the way lies making that way an easement for recreational use.

runs diagonally to the southwest from Weeks Mills, down to Lamb's residence, then on through Lamb's property to the Farmington town line. The portion of the road at issue in this case runs from Lamb's residence to Farmington. Lamb owns all the land on both sides of the disputed portion of the road and it provides him with his primary means of access to the inner parts of his property. The rest of the road, from Weeks Mills to Lamb's residence, is maintained by the Town and provides Lamb with access to his property from other public roads.

In 1987, Lamb petitioned the Town to repair the disputed portion of the road,[2] but the Town never responded to his request. Lamb then petitioned the County pursuant to 23 M.R.S.A. § 3652 (Supp.1992)[3] to have the County order the Town to repair the road. The County, however, refused to hear Lamb's petition because the Town contested the status of the road arguing that it had been abandoned.

The next year, Lamb again petitioned the Town to repair the road, the Town again refused to act,[4] and Lamb again petitioned the County pursuant to section 3652. This time, over the Town's objection, the County heard Lamb's petition, and after the hearing, the County ordered the Town to repair the road. The Town, however, refused to repair the road in the time ordered by the County, contending that the County had no jurisdiction to order repairs to a road that was abandoned. The Town did not appeal the County's decision. Consequently, Lamb petitioned the County pursuant to 23 M.R.S.A. § 3654 (1980),[5] requesting that the County cause the road to be repaired and charge the Town for the cost of the repairs. The County refused Lamb's petition, stating that section 3654 gave the County the discretion to make the repairs, and it chose not to.

Lamb filed a complaint in the Superior Court against both the Town and the County pursuant to M.R.Civ.P. 80B[6] requesting

2. Towns are responsible for the upkeep of certain roads under 23 M.R.S.A. § 3651 (1980), which states:
   Highways, town ways and streets legally established shall be opened and kept in repair so as to be safe and convenient for travelers with motor vehicles. In default thereof, those liable may be indicted, convicted and a reasonable fine imposed therefor.

3. 23 M.R.S.A. § 3652 (Supp.1992) states:
   When a town liable to maintain a way unreasonably neglects to keep it in repair as provided in section 3651, after one of the municipal officers has had 5 days' actual notice or knowledge of the defective condition, any 3 or more responsible persons may petition the county commissioners for the county, setting forth such facts, who, if satisfied that such petitioners are responsible for the costs of the proceedings, shall fix a time and place near such defective way for a hearing on such petition and cause such notice thereof to be given to the town and petitioners as they may prescribe. At the time appointed, the commissioners shall view the way alleged to be out of repair and hear the parties interested, and if they adjudge the way to be unsafe and inconvenient for travelers, motor vehicles, horses, teams and carriages, they shall prescribe what repairs shall be made, fix the time in which the town shall make them, give notice thereof to the municipal officers and award the costs of the proceedings against the town. If they adjudge the way to be safe and convenient, they shall dismiss the petition and

award the costs against the petitioners. If they find that the way was defective at the time of presentation of the petition, but has been repaired before the hearing, they may award the costs against the town, if in their judgment justice requires it.

4. The Town estimated that it would cost roughly $100,000 to repair the road properly.

5. 23 M.R.S.A. § 3654 (1980) states:
   If the town neglects to make the repairs prescribed by the commissioners under section 3652, within the time fixed therefor in such notice to the town, they may cause it to be done by an agent, not one of themselves. Such agent shall cause the repairs to be made forthwith and shall render to the commissioners his account of disbursement and services in making the same. His account shall not be allowed without such notice to the town as the commissioners deem reasonable. When the account is allowed, the town becomes liable therefor, with the agent's expenses in procuring the allowance of his account and interest after such allowance, and said commissioners shall render judgment therefor against the town in favor of the agent. If a town neglects to pay such judgment for 30 days after demand, a warrant of distress shall be issued by the commissioners to collect the same.

6. M.R.Civ.P. 80B(a) states in relevant part:
   When review by the Superior Court, whether by appeal or otherwise, of any action or

an injunction to force the County to repair the road pursuant to its section 3654 responsibilities. The Town responded with a counterclaim seeking a declaratory judgment that the road had been abandoned pursuant to 23 M.R.S.A. § 3028. The court severed the case and, apparently with the consent of the parties, ordered a separate bench trial solely on the issue of whether the road had been abandoned pursuant to section 3028 during the thirty-year period from 1960 to 1990.[7]

At the trial, the Town introduced evidence that in 1932 the townspeople voted at the town meeting to authorize the selectmen to take the steps necessary to discontinue the portion of the road at issue in this case.[8] In addition, the Town introduced evidence that in the late 1950's, the owner of the land asked the Town to repair the road, but the Town refused claiming that the road had been discontinued. As a result, the owner repaired the road himself. Two selectmen of the Town, who, as part of their job, had to approve the road maintenance schedule and road repairs each year, testified that the road had never been repaired at Town expense during the time period of 1960 to 1990.

Lamb presented evidence that the road, though falling into disrepair, has been used over the years by sportsmen and sightseers as well as by loggers. In addition, he presented evidence that in 1965 or 1966, a former road commissioner, Theodore Bailey, and several others rebuilt a bridge along the road. Even though the Town's records indicate that Bailey was paid by the Town for road work performed during that year, there is no record of what work Bailey was paid for because most of the Town records do not list the specific road worked on.

The court found that there had been no repairs made to the road in the thirty-year period, that Lamb had failed to prove an intent on the part of the municipality and the public to use the road as a public way, and that it was, therefore, abandoned pursuant to section 3028. On the strength of this conclusion, the court ruled that the County had no authority to grant Lamb's road repair petition. The court then granted summary judgment for the Town dismissing Lamb's complaint against the Town and County. Lamb then appealed to this court.

I.

■ Lamb first argues that the Town was precluded from bringing its declaratory judgment counterclaim to litigate the issue of the road's abandonment because the Town failed to appeal the Commissioner's decision. We disagree.

It is well settled that county commissioners have no authority to decide the issue of whether a town road has been abandoned under 23 M.R.S.A. § 3028. *Town of China v. Kennebec County Comm'rs*, 393 A.2d 526, 528 (Me.1978). Furthermore, the County admitted at oral argument that it refused to consider and did not rule on the status of the road for precisely this reason. Since no administrative judgment is binding without " 'conclusively determin[ing] the matter in question,' " *Hamilton v. Town of Cumberland*, 590 A.2d 532, 535 (Me.1991) (quoting *Restatement (Second) of Judgments* § 83(2) (1982)), the Town's failure to appeal the County's decision does not preclude the Town from bringing the declaratory judgment counterclaim. *See also Town of China*, 393 A.2d at 528–529. The Superior Court properly considered the Town's counterclaim for declaratory judgment on the status of the road.

---

failure to act by a governmental agency, including any department, board, commission, or officer, is provided by statute or is otherwise available by law, proceedings for such review shall, ... be governed by these Rules of Civil Procedure as modified by this rule.

7. Lamb argues that it was improper to use this time period as the "test period" for the trial. At the time Lamb brought his action, section 3028

provided that only one test period could be used, that from 1946 to 1976. *See* 23 M.R.S.A. § 3028 (1980). Nevertheless, it appears that the parties agreed to use the later time period as authorized by the present statute. We will respect this agreement.

8. Apparently, though, the selectmen never took the steps to formally discontinue the road.

## II.

■ Lamb next argues that section 3028 is unconstitutional under the Maine and the United States Constitutions because it allows a taking of private property without just compensation and violates his right to due process and equal protection.[9] Because we find that the statute does not work a "taking" within the meaning of either constitution nor deny him due process and equal protection of the laws, we reject his contentions.

Lamb bases his takings argument on our prior decision in *Jordan v. Town of Canton*, 265 A.2d 96 (Me.1970). In *Jordan*, we considered a statute that allowed municipal officers to discontinue a public road and to terminate the municipality's responsibility to maintain and repair defects in the road.[10] *See Jordan*, 265 A.2d at 97. We held that where all reasonable access to one's property has been destroyed by governmental action, the property right had been "taken" within the meaning of Me. Const. art. I, § 21. *Jordan*, 265 A.2d at 99.

Section 3028 differs from the statute considered in *Jordan* in that it does not allow the Town by unilateral action to discontinue upkeep of a road. Section 3028 serves only to raise a rebuttable presumption of abandonment on a showing that the road has not been kept passable by motor vehicles at town expense for a period of thirty consecutive years. At any time during that thirty-year period, any interested member of the public had the right to force the Town, by the same procedures Lamb seeks to utilize here, to repair or to pay for repairs to the road. Therefore, for thirty years to have elapsed without the Town keeping the road passable for motor vehicles, the public must have failed to enforce its rights in the road.

■ The common law has long recognized in the doctrine of abandonment that rights in public ways may be lost through neglect. *See Town of South Berwick v. White*, 412 A.2d 1225, 1227 (Me.1980); *Smith v. Dickson*, 225 A.2d 631, 635–36 (Me.1967); *Piper v. Voorhees*, 130 Me. 305, 309–310, 155 A. 556 (1931). Under the doctrine of abandonment, a presumption of a public intent to abandon a road may be raised by evidence of nonuse for twenty years or more, intentional and voluntary desertion of a road, or acquiescence, even for a few years, in the discontinuance of an old road combined with use of a new road. *Piper*, 130 Me. at 309–310, 155 A. 556. This presumption may be rebutted by other evidence of a contrary intent on the part of the public. *Piper*, 130 Me. at 309–310, 155 A. 556; *Pratt v. Sweetser*, 68 Me. 344, 346 (1878).

---

9. Private individuals are protected from governmental takings under the Maine Constitution article 1, sections 6–A, 21 and the U.S. Constitution through the operation of its fifth and fourteenth amendments. Me. Const. art. 1, § 21 states:

> Private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it.

Me. Const. art. 1, § 6–A states:

> No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of his civil rights or be discriminated against in the exercise thereof.

U.S. Const. amend. V states:

> No person shall ... be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. XIV states:

> No State shall ... deprive any person of life, liberty, or property, without due process

of law; nor deny to any person within its jurisdiction the equal protection of the laws.

10. That statute was 23 M.R.S.A. § 2068 which read in pertinent part:

> Where any public highway, road, street, town or county way, ... shall, after public notice, be found by the municipal officers of cities and towns with regard to such ways located within their respective boundaries, ... to be of limited use and value to the traveling public, said city, town or county shall not be required to expend any further public funds on such ways, but such ways shall be deemed public ways, and not abandoned and the general public shall have the right to use same, and any person, firm, corporation or association may expend their funds for the upkeep of same on a purely voluntary basis. No city, town or county shall be liable for defects in such ways.... A finding of limited use shall not be deemed to be a discontinuance.

See *Jordan v. Town of Canton*, 265 A.2d 96, 97 (Me.1970). This statute was repealed by the legislature in 1973. *See* P.L.1973, ch. 20.

Section 3028 merely codifies one aspect of this doctrine by raising the presumption of abandonment once evidence is shown of lack of town maintenance (and therefore lack of the public's asserting its rights in the road) for a period of thirty consecutive years. In the absence of governmental action, it does not constitute a taking or violate due process to create a presumption of a public intention to abandon a road in accordance with settled common law doctrine where creation of the presumption hinges on a failure of the public to assert its right to have the road repaired. Since Lamb does not, and cannot, allege that the statute treats him differently than others in the same position, Lamb's equal protection argument must fail as well.

### III.

■ Lamb next contends that there was insufficient evidence to support the court's finding that the road had been abandoned. Lamb argues that the Town failed to prove that no public funds were expended on the road in the thirty-year period, and that even if the Town had proved lack of public maintenance, thereby raising a presumption of abandonment, he had produced enough evidence of a public intent to use the road as a public way to rebut the presumption. We disagree.

For the most part, there was abundant evidence to support the court's finding that no repairs were made to the road at Town expense during the thirty years from 1960 to 1990. The only disputed incident involves extensive repairs to the road, including rebuilding a bridge, performed in 1965 by a former road commissioner, Theodore Bailey. Even though the Town records indicate that Bailey was paid for performing road work in 1965, they do not specify on which roads the work was performed. In addition, James Smith, who was a Town selectman at the time, testified that if Bailey had done the work on the disputed road, he would have known, and he knew of no work done on that road at town expense while he was selectman. It was not clearly erroneous for the court to conclude that the 1965 repairs were not made at Town expense.

The evidence that the road had not been kept passable at the Town's expense gave rise to the presumption that the road had been abandoned. Lamb then had the burden of producing evidence to rebut that presumption. The trial court found that Lamb failed to meet this burden. We will reverse that finding only if the evidence compelled the court to find in Lamb's favor. *See Luce Co. v. Hoefler,* 464 A.2d 213, 215 (Me.1983).

Lamb introduced some evidence that the road had been used by hunters, loggers, and sightseers during the thirty-year period. There was also evidence, however, that the Town refused to repair it during that period, that it had been fenced for part of the period, and that most of the use by hunters, loggers, and sightseers was done at Lamb's direction or with his permission. This evidence did not compel the court to find clear intent on the part of the Town or the public to consider or use the road as a public way.

### IV.

On the basis of its conclusion that the road had been abandoned, the court granted the Town's motion for summary judgment on Lamb's complaint and dismissed his 80B complaint against the County. Even though the County's order to the Town to repair the road was final, *see Town of China,* 393 A.2d at 528, an injunction in the nature of a mandamus is discretionary with the court. *See Chequinn Corp. v. Mullen,* 159 Me. 375, 377, 193 A.2d 432 (1963). Because Lamb was requesting an injunction to force the County to repair a road that the court concluded had been abandoned, it was not an abuse of discretion for the Court to deny Lamb's injunction request. Lamb's other contentions lack merit and do not require discussion.

The entry is:

Judgment affirmed.

All concurring.