PIPPENGER ET AL. *v.* CITY OF MISHAWAKA ET AL.

[No. 17,881. Filed October 25, 1949.]

*Charles Davis*, of Mishawaka, for appellants.

*Vernon J. Freed,* attorney for City of Mishawaka; and *G. A. Farabaugh,* and *L. C. Chapleau;* and *Farabaugh, Pettengill, Chapleau & Roper* (of counsel), all of South Bend, attorneys for New York Central Railroad Company.

CRUMPACKER, J.—The trial court sustained a demurrer to the appellants' complaint and upon their refusal to plead over entered judgment against them. Alleged error in such ruling presents the only question involved in this appeal.

The complaint alleges in substance that the appellants are residents and taxpayers of the city of Mishawaka, Indiana, and as such have the right to and do use the public streets of said city. That on the 4th day of December, 1944, said city, acting through its Board of Public Works, hereinafter called the board, entered into a written contract with the appellee, New York Central Railroad Company, hereinafter called the railroad, whereby it agreed with the railroad to vacate and close, "in a valid and legal manner," that part of 10 public streets in said city where the same cross the railroad's main line right of way without cost to said railroad and without assessing its property for any benefits derived from the vacation and closing of said streets. That thereafter, pursuant to said agreement, such proceedings were had by said board as resulted in an order formally vacating nine of the streets specified insofar as they are in common with the railroad's right of way. That in further pursuance to said agreement said board vacated said streets without cost to the railroad and refused to assess its property for the benefits that resulted therefrom. That by reason of such acts by the board, all in pursuance to said unlawful contract, the plaintiffs (appellants) and others similarly situated, have been deprived of the use of that part of said streets so

vacated. They ask that "all of the proceedings taken by said board, pursuant to its unlawful agreement with said railroad, be declared void and of no effect or purpose whatever and that the defendants (appellees) be enjoined from further obstructing said streets."

In general the appellees' position, in support of their demurrer to the foregoing complaint, may be summarized as follows: The contract, which the complaint characterizes as unlawful, shows on its face that it is a valid contract in that it is inoperative unless the Board of Public Works of the city of Mishawaka first succeeds in vacating the streets involved in a "valid and legal manner." That the term "valid and legal manner" implies a bona fide hearing and determination of all issues including the desirability of such action from the public's standpoint after considering remonstrances, the award of damages and the assessment of benefits and costs. That the legislature has vested in said board the exclusive control of the streets in said city with power to vacate the same and, to implement such power, has prescribed a statutory procedure therefor. That in the absence of an allegation to the contrary, and there is none, it must be assumed that the board complied with the statute. That having done so the motives and reasons which prompted the board in vacating the streets in question cannot be made the subject of judicial investigation in the absence of fraud and none is alleged.

It is true that ordinarily the motives which prompted a municipality to vacate a street cannot be made the subject of judicial investigation. *Windle* v. *City of Valparaiso* (1916), 62 Ind. App. 342, 113 N. E. 429; *City of Indianapolis* v. *Maag* (1915), 57 Ind. App. 493, 107 N. E. 529. The rule is otherwise however when the court is called upon to determine whether or not such action was prompted through fraud. Under

such circumstances a judicial investigation is proper and constitutes a direct attack on the vacation order, *Burridge* v. *City of Mishawaka* (1948), 225 Ind. 613, 77 N. E. 2d 297, and it remains such even though injunctive relief is sought as an ancillary remedy. *Windle* v. *City of Valparaiso, supra.*

As we view the complaint there is no effort made to charge the appellees with actual fraud, that is to say, conduct inspired by a deliberate, corrupt or ██ fraudulent purpose to injure or deceive the public, including these appellants, and thereby prejudice their rights. Fraud, however, may be constructive as well as actual. Constructive fraud has been defined by the Supreme Court as "a breach of legal or equitable duty which, irrespective of. the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. . . . Such a situation may arise when the conduct under inquiry is so manifestly wrong and prejudicial to the public interest as to create a conviction that it was the result of fraud and a plain disregard of duty." *Budd* v. *Bd. of Co. Comrs. of St. Joseph Co.* (1939), 216 Ind. 35, 22 N. E. 2d 973.

While there are no positive averments of fraud in the complaint, in our opinion it alleges facts showing constructive fraud as above defined and under such ██ circumstances no positive averments are necessary. *Holliday* v. *Perry* (1906), 38 Ind. App. 588, 78 N. E. 877.

The complaint specifically alleges that the appellees made a contract whereby the city agreed to vacate certain of its public streets in the manner provided by statute but in the process of so doing no costs were to be taxed against the railroad nor was its property to be assessed for benefits that would

inure by reason thereof. It further alleges that the city, *acting pursuant* to said agreement, vacated said streets and refused to assess the land of the railroad in the amount it was benefited thereby or in any amount whatsoever. It seems to us that this is the equivalent of saying that by reason of the agreement, and without regard to public interest, the streets involved were vacated and as a result thereof the land of the railroad was benefited but, notwithstanding its plain duty to assess such benefits against said land, the city, solely in consequence and by reason of its contractual obligation, refused to do so. It was the city's duty, acting through its Board of Public Works, to vacate the streets in question for the public good and not because of a contract through which it surrendered its discretion to determine that question on its merits. Furthermore the city, through its Board of Public Works, owed a statutory duty to assess accruing benefits to the railroad's land which duty, pursuant to its contract, it wholly disregarded. The city could not absolve itself from these duties, or bargain away its right to exercise the discretion vested in it by law in the performance of a public duty, by a contract committing it to act in an agreed manner. The law demanded of the city that it retain its freedom of judgment up to the very moment it was required to act so that its decision when finally made would be influenced only by a regard for public welfare.

The Supreme Court of North Carolina said, in a case somewhat similar in its facts to the case at bar: "An agreement or contract made by individuals with public officials for the purpose of influencing the exercise of discretion vested in them by law, as to the manner in which they shall perform public duties, although the consideration for such agreement or contract inures to the benefit of the public, is void as against

public policy." *Johnson* v. *Board of Com'rs.* (1926), 192 N. C. 561, 135 S. E. 618. We approve of this doctrine and when we apply it to the facts pleaded in the complaint under consideration it is difficult to conceive of a clearer case of constructive fraud. The fact that the proceedings, by which the appellee city performed its part of the unlawful contract, followed the formula prescribed by statute affords no shield.

There remains but one other question in the case. The appellees contend that the complaint does not show that the appellants and all members of the class they purport to represent have an actual common interest in the subject matter of the action. We do not construe the complaint as attempting to plead a class action. This is a suit brought by the appellants as taxpayers of the city of Mishawaka to establish the right of the public, including themselves, to use the streets vacated. It was held in *Zoercher* v. *Alger* (1930), 202 Ind. 214, 172 N. E. 186, 172 N. E. 907, 70 A. L. R. 1232, that a taxpayer has a substantial interest in the subject matter of litigation to determine and establish public rights and as such may maintain the suit even though he has suffered no special injury to his person or property.

Judgment reversed and cause remanded with instructions to overrule the demurrer to the complaint.

NOTE.—Reported in 88 N. E. 2d 168.